UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| v. | : | 25-CR-265-DLF |
| GLENN WILLIAMS | : | |

**EMERGENCY MOTION FOR REVIEW AND MEMORANDUM IN SUPPORT OF <u>PRETRIAL RELEASE</u>**

Glenn Williams, through the undersigned counsel, respectfully requests that this Court release him on bond pursuant to the Bail Reform Act, 18 U.S.C. § 3142 and *United States v. Salerno*, 481 U.S. 739 (1987). Section 3142(b) states that the Court "shall order the pretrial release of [Mr. Williams] on personal recognizance . . . unless" there are absolutely no conditions of release that would ensure Mr. Williams's appearance at court and the safety of the community. It is the government's burden to show either (1) by a preponderance of the evidence that Mr. Williams is a risk of flight or (2) by clear and convincing evidence that no conditions can ensure the safety of the community. The government has not and cannot meet that burden. Mr. Williams therefore asks the Court to find that there are conditions that will reasonably ensure his appearance and ensure the safety of the community and to release him under those conditions.

## BACKGROUND

On August 29, 2025, members of the MPD arrived at a Bank of America in NW D.C. after a bank teller at the location called the police regarding an attempted robbery. According to the complaint, after being passed a note that read, "This is a Robbery! Do not hit alarm and no dye pack Please do as I say nobody will get shot!," the bank teller walked away and called 911. The suspect then left the bank without getting any property or money.

On August 31, 2025, Mr. Williams was arrested at the Stadium Armory metro station and

1

subsequently charged with attempted bank robbery in violation of 18 U.S.C. § 2113(a). At his initial appearance, the government moved to detain Mr. Williams pending trial pursuant to 18 U.S.C. § 3142(f)(1)(A). That same day, Magistrate Judge Harvey granted the government's motion. Mr. Williams now seeks review by this Court and respectfully requests this Court release Mr. Williams on conditions of release.

## LEGAL STANDARD

Title 18 United States Code Section 3145(b) provides that if "a person is ordered detained by a magistrate judge, . . . the person may file, with the court having original jurisdiction over the offense, a motion for revocation or amendment of the order." And "[t]he motion shall be determined promptly." *Id.* This Court reviews the determination of the magistrate judge *de novo*. *See United States v. Blackson*, 2023 WL 1778194, *5 (D.D.C. Feb. 6, 2023).

Consistent with the presumption of innocence and the Eighth Amendment prohibition against excessive bail, the Bail Reform Act of 1984 provides that a defendant should be released pending trial on personal recognizance or "subject to the least restrictive further conditions, or combination of conditions that . . . will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(b) and (c)(1)(B). The Supreme Court has explained: "In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987); *see also United States v. Singleton*, 182 F.3d 7, 9 (D.C. Cir. 1999) ("Detention until trial is relatively difficult to impose."). "Nothing in this section shall be construed as modifying or limiting the presumption of innocence." 18 U.S.C. § 3142(j). As a general rule, courts should refuse to release defendants on bail "[o]nly in rare circumstances," and "only for the strongest of reasons." *United States v. Motamedi*, 767 F.2d 1403, 1405, 1406 (9th Cir. 1985) (Kennedy, J.).

Any "[d]oubts regarding the propriety of release should be resolved in favor of the defendant." *Id*. at 1405.

It is the government's burden to demonstrate either by a preponderance of the evidence that the defendant is more likely than not to flee, or by clear and convincing evidence that preventative detention is necessary to ensure the safety of the community. *See United States v. Jessup*, 757 F.2d 378, 384 (1st Cir. 1985) (Breyer, J.). Under the Bail Reform Act, the Court must consider the following factors when determining whether the government has presented sufficient evidence that Mr. Williams be detained: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence; (3) the history and characteristics of the person charged; and (4) the nature and seriousness of the danger posed by the person to any person in the community if he is released. 18 U.S.C. § 3142(g).

I.  **No Section 3142(f) provision applies in this case**

Section 3142(f) authorizes detention hearings in limited circumstances. Under § 3142(f)(1), a hearing is to be held in a case that involves one of a list of offenses. And under § 3142(f)(2), a hearing is to be held when the government argues that there is a "serious risk" that the defendant will flee or obstruct justice.

Here, the government requested a detention hearing under § 3142(f)(1)(A), arguing that Mr. Williams is charged with a crime of violence. But Mr. Williams, who has been charged with attempted federal bank robbery in violation of 18 U.S.C. § 2113(a), is not charged with a crime of violence. In, *United States v. Burwell*, 122 F.4th 984, 986 (D.C. Cir. 2024) the D.C. Circuit, held that federal bank robbery under 18 U.S.C. § 2113(a) is affirmatively *not* a crime of violence. In so holding, the Circuit observed that "[f]orce and violence, intimidation, and extortion are three ways a person might rob a bank." *Id.* Section 2113(a) is therefore "indivisible as to extortion,"

3

which "need not involve the use or threat of force." *Id.* For that reason, federal bank robbery is not a crime of violence. *Id.* at 986–87.

In addition, federal bank robbery is not an offense that carries a maximum sentence of life, § 3142(f)(1)(B), a controlled substance offense that carries a maximum of ten years, § 3142(f)(1)(C), or a crime of violence that involves a minor victim, § 3142(f)(1)(E).

Nor has Mr. Williams "been convicted of two or more offenses described in subparagraphs (A) through (C), or two or more State or local offenses that would have been offenses in subparagraphs (A) through (C)." § 3142(f)(1)(D). According to the pretrial services report, Mr. Williams's prior offenses of conviction are robbery with a deadline weapon, grand larceny not from a person, driving under the influence, grand larceny, petit larceny, burglary, retail theft, and theft by unlawful taking. Only one of these offenses—robbery with a deadline weapon—is an offense that falls under the definition in § 3142(f)(1)(D).

Because bank robbery is not a crime of violence and the government never argued that Mr. Williams presents a serious risk of flight, this Court should conclude that there is a combination of conditions that can reasonably assure Mr. Williams's appearance and the safety of the community.

**II.     The Government has not met its burden of proving that Mr. Williams poses a *serious* risk of flight under § 3142(f)(2)(A)**

Mr. Williams should be released on conditions because there is not a "serious risk that [he] will flee" the jurisdiction under § 3142(f)(2)(A). Ordinary "risk of flight" is not a factor in § 3142(f). There is some risk of flight in every criminal case; "serious risk" of flight means something more.

According to a basic canon of statutory interpretation, the term "*serious* risk" means that the risk must be more significant or extreme than an ordinary risk. *See, e.g.*, *Corley v. United*

*States*, 556 U.S. 303, 314 (2009); *Babbitt v. Sweet Home Chapter of Communities for a Great Oregon*, 515 U.S. 687, 698 (1995) (noting interpretation of statute should be reluctant to treat statutory terms as surplusage).  Indeed, Congress has prescribed "serious risk of flight" and the risk of non-appearance as separate requirements.  *United States v. White*, No. 3:21-MJ-04070, 2021 WL 2155441, at *8 (M.D. Tenn. May 27, 2021) (citing *United States v. Gibson*, 384 F. Supp. 3d 955, 965 (N.D. Ind. 2019)) ("Congress settled on very different language when describing the analysis courts must undertake once a detention hearing goes forward.").  A risk of flight suggests an intentional and active effort to put oneself outside of the purview of the court, whereas non-appearance can cover negligent and other non-intentional circumstances.  *Id.*  Further, if a case does not involve a "serious risk" of flight then the government's request for detention fails at step one.  *Id.*  "The ordinary meaning of 'flee' [under (f)(2)(A)] suggests volitional conduct."  *United States v. Ailon-Ailon*, 875 F,3d 1334, 1338 (10th Cir. 2017).

The BRA's legislative history also makes clear that detention based on serious risk of flight is only appropriate under "extreme and unusual circumstances."[1]  For example, the case relied on in the legislative history as extreme and unusual enough to justify detention on the grounds of serious risk of flight involved a defendant who was a fugitive and serial impersonator who had failed to appear in the past, and had recently transferred over a million dollars to Bermuda.  *See United States v. Abrahams*, 575 F.2d 3, 4 (1st Cir. 1978).  The government must

---

[1] *See Bail Reform Act of 1983: Rep. of the Comm. on the Judiciary*, 98th Cong. 48 (1983) ("Under subsection f(2), a pretrial Detention Hearing may be held upon motion of the attorney for the government or upon the judicial officer's own motion in three types of cases. . . . [T]hose [types] involving . . . a serious risk that the defendant will flee . . . *reflect the scope of current case law that recognizes the appropriateness of denial of release in such cases*.") (emphasis added) (citing *United States v. Abrahams*, 575 F.2d 3, 8 (1st Cir. 1978)—which held that only a "*rare case of extreme and unusual circumstances . . . justifies pretrial detention*"—as representing the "current case law"); *see also Gavino v. McMahon*, 499 F.2d 1191, 1995 (2d Cir. 1974) (holding that in a noncapital case the defendant is guaranteed the right to pretrial release except in "extreme and unusual circumstances"); *United States v. Kirk*, 534 F.2d 1262, 1281 (8th Cir. 1976) (holding that bail can only be denied "in the exceptional case").

demonstrate that the risk of flight in a particular case rises to the level of extreme or unusual, and no such showing has been made here.

Moreover, the "[m]ere opportunity for flight is not sufficient grounds for pretrial detention." *United States v. Himler*, 797 F.2d 156, 161 (3d Cir. 1986). The Bail Reform Act authorizes detention "only upon proof of a likelihood of flight." *Id.* at 160. The "preponderance must, of course, go to the ultimate issue: that no combination or conditions -- either those set out in the Bail Reform Act itself or any others that the magistrate or judge might find useful -- can 'reasonably' assure that the defendant will appear for trial." *United States v. Xulam*, 84 F.3d 441, 442 (D.C. Cir. 1996).

In this case, there is no reason to believe that Mr. Williams is a "serious" risk or that there are no conditions of release which would be sufficient to assure his appearance. Mr. Williams is a native of the greater DMV area and has strong ties in the area. In addition, he has no history of flight.

The D.C. Circuit has held that a defendant's ability to flee the country based merely on ties to a foreign country, without evidence that he is *likely* to flee, cannot serve as the basis for pretrial detention. *See Xulam*, 84 F.3d at 443. In *Xulam*, the court rejected the government's contention that the defendant -- an immigrant from Turkey who was charged with falsifying information on a passport and who had only been in the country for three years -- should be denied bail because nothing could stop him if he decided to flee. *Id.* at 444. The Court explained: "That, of course, is true of every defendant released on conditions; it is also not the standard authorized by law for determining whether pretrial detention is appropriate. Section 3142 speaks of conditions that will 'reasonably' assure appearance, not guarantee it." *Id.*; *see also United States v. Himler*, 797 F.2d 156 (3d Cir. 1986) ("Mere opportunity for flight is not sufficient grounds for pretrial detention.");

6

*Motamedi*, 767 F.2d at 1408 (revoking detention order for an Iranian citizen accused of illegal arms deals who allegedly had large bank accounts abroad and an ability to return to Iran with impunity). This was true in *Xulam*, even when the defendant was charged with passport fraud, suggesting at least a willingness to seek false documents that would allow him to leave the United States.

There is not even evidence here of connections to another country, let alone financial resources to demonstrate an ability to flee. The government has not demonstrated that Mr. Williams presents a *likelihood* of flight – and he, in fact, does not present a serious risk of flight. In fact, Mr. Williams's lack of resources with which to flee is evidenced by his eligibility for court-appointed counsel in this case.

Furthermore, a defendant should not be detained as a "serious risk" of flight when the risk of non-appearance can be mitigated by conditions of release. The only defendants who qualify for detention under § 3142(f)(2) are those who are "[t]rue flight risks"—defendants the government can prove are likely to willfully flee the jurisdiction with the intention of thwarting the judicial process. The government has not met its burden to seek detention of Mr. Williams as a "serious risk of flight" and, as stated below, there are conditions that can reasonably ensure his appearance at court.

**III.  The government did not and cannot meet its burden to demonstrate that Mr. Williams is a danger to the community**

The D.C. Circuit reiterated the clear and convincing standard that the government must meet to justify detaining a defendant as a danger to the community:

> The crux of the constitutional justification for preventive detention under the Bail Reform Act is that '[w]hen the Government proves by clear and convincing evidence that *an arrestee presents an identified and articulable threat to an individual or the community*, . . . a court may disable the arrestee from executing that threat. . . . Therefore, to order a defendant preventatively detained,

7

> a court must identify an articulable threat posed by the defendant to an individual or the community.

*United States v. Munchel*, 991 F.3d 1273, 1282-83 (D.C. Cir. 2021) (quoting *Salerno*, 481 U.S. at 751) (emphasis added); *see also United States v. Patriarca*, 948 F.2d 789, 792 (1st Cir. 1991) (explaining that the defendant must pose an actual danger to community, not that the defendant in theory posed a danger to the community). The government did not meet its burden here and it still cannot meet its burden. Mr. Williams should therefore be released under conditions. The Bail Reform Act factors demonstrate that there are conditions or combinations of conditions that can reasonably assure Mr. Williams's appearance at trial and protect the public.

### IV.     Mr. Williams should be released on conditions short of confinement

Because there was no basis for a detention hearing in this case and the §3142(g) factors weigh in favor of release, the Court should conclude that there is a combination of conditions that can reasonably assure Mr. Williams's appearance in court and the safety of the community.

**The Nature and Circumstances of the Offense**. The indictment charges Mr. Williams with attempted bank robbery, in violation of 18 U.S.C. § 2113(a). There are no allegations that Mr. Williams used or brandished the firearm, or even carried the firearm. With respect to allegedly dangerous conduct, all the government has in this case is Mr. Williams's alleged note stating that money should be handed over to avoid getting "shot." But the government's primary witness, stated that after they read the note, they "scanned Suspect-1," who the government alleges to be Mr. Williams, "for any possible weapons. When [the witness] did not see any weapons, [the witness] walked away from the window and behind a wall before calling the police in accordance with their training." Complaint at 1.

It bears repeating that the primary witness in this case reported that he did not see any weapon and Mr. Williams was not found with one. In addition, individuals charged with firearms

8

offenses have been repeatedly released in this District, including in cases (unlike here) where the defendant was found with other contraband, allegedly fled from police, or even discarded the firearm. *See, e.g., United States v. Abass*, No. 25-cr-79 (defendant allegedly fled and tossed firearm; drugs found in search of his person); *United States v. Gaskins/Gaines*, No. 25-cr-39 (both defendants released; both alleged to have fled and tossed firearms); *United States v. Belton*, No. 25-mj-51 (defendant charged with 924(c) and possession with intent to distribute); *United States v. Robinson*, No. 24-cr-95 (defendant fled from police; on probation at the time of arrest); *United States v. Yates*, No. 24-cr-89 (defendant charged with 924(c) and possession with intent to distribute cocaine; alleged machinegun switch); *United States v. Griffith*, No. 24-cr-56 (defendant fled from police); *United States v. Wiggins*, No. 23-cr-109 (defendant fled from policed and tossed firearm; firearm fitted with a "giggle switch"); *United States v. Jones*, No. 23-cr-154 (defendant fled from police; case later dismissed after suppression hearing); *United States v. Hicks*, No. 19-cr-288 (firearm allegedly tossed).

**The Weight of the Evidence.** The government alleges that much of the evidence in this case comes from CCTV footage from the bank at issue and other footage that corresponds to Mr. Williams's use of a MetroCard. But the weight of the evidence is just one factor, and it should be considered against the presumption of innocence. Mr. Williams is innocent until proven guilty and too much consideration of the weight of the evidence flies in the face of that important constitutional protection. "Even overwhelming evidence of guilt would not, alone, meet [the clear and convincing test]." *United States v. Taylor*, 289 F. Supp. 3d 55, 66 (D.D.C. 2018).

**The History and Characteristics of Mr. Williams.** Mr. Williams's history and characteristics demonstrate that there are conditions of release that can reasonably assure his appearance and protect the community. Mr. Williams has significant ties to the community—he is from the area

and lives with his mother, brother, and nephew, who he helps look after Mr. Williams's sister died. In addition, Mr. Williams is blind in one eye and has significant vision impairment in his other.

Though Mr. Williams was on probation at the time of the alleged offense, he has been in compliance since his probation began in 2024. But should the Court have any concerns about future compliance, Mr. Williams is seeking release under much more stringent conditions than he was under as part of his probation—specifically, he requests high intensity supervision. His history and characteristics, combined with Mr. Williams's advanced age show he is not a serious risk of flight nor a danger to the community, which is what the government must establish to justify detention.

**The Nature and Seriousness of the Danger to Any Person or the Community Posed by Mr. Williams's Release**. The government has not and cannot provide clear and convincing evidence to support a finding that Mr. Williams would be a danger to the community if released. First, the dangerousness analysis "does not turn on any generalized, backward-looking assessment" of the offender or the crime. *Munchel*, 991 F.3d at 1286 (Katsas, J., concurring). "Instead, it turns on a specific, forward looking assessment of whether" the individual "currently pose[s] an unmitigable threat to public safety." *Id*. The government has not and cannot provide specific evidence to support a finding that Mr. Williams currently poses an unmitigable threat to public safety. Instead, the government again relies on the *false* contention that bank robbery is a crime of violence. None of the government's arguments demonstrate clear and convincing evidence that Mr. Williams is presently a danger to the community.

**Statistics showing that it is extremely rare for defendants on bond to flee or recidivate demonstrate that Mr. Williams does not pose a serious risk of flight or danger to the community**. In this case, this Court should be guided by Administrative Office of the Courts

10

statistics showing that nearly everyone released pending trial appears in court and does not reoffend. In fact, in 2019, 99% of released federal defendants nationwide appeared for court as required and 98% did not commit new crimes on bond.[2] Significantly, this near-perfect compliance rate is equally evident in federal districts with very high release rates and those with very low release rates.[3] Even in districts that release two-thirds of all federal defendants on bond, fewer than 1% fail to appear in court and just over 2% are rearrested while released.[4] The below chart reflects this data:



---

[2] AO Table H-15 (Dec. 31, 2019), *available at* Mot. for Bond, *United States v. Rodriguez*, No. 19-CR-77 (E.D. Wis. Apr. 2, 2020), ECF No. 41, Ex. 1, archived at https://perma.cc/LYG4-AX4H (showing a nationwide failure-to-appear rate of 1.2% and a rearrest rate of 1.9%).

[3] The districts with the highest and lowest release rates were identified using the version of AO Table H-14A for the 12-month period ending December 31, 2019. *See* AO Table H-14A (Dec. 31, 2019), https://perma.cc/32XF-2S42. The failure-to-appear and rearrest rates for these districts were calculated using Exhibit 1, AO Table H-15. The districts with the lowest release rates in 2019 were, from lowest to highest, S.D. California, W.D. Arkansas, E.D. Tennessee, S.D. Texas, E.D. Missouri, N.D. Indiana, E.D. Oklahoma, W.D. Texas, W.D. North Carolina, C.D. Illinois; the districts with the highest release rates are, from lowest to highest, E.D. Michigan, E.D. Arkansas, D. New Jersey, E.D. New York, D. Maine, D. Connecticut, W.D. New York, W.D. Washington, D. Guam, D. Northern Mariana Islands. *See* AO Table H-14A.

[4] *See* AO Table H-15; AO Table H-14A.

### V. Mr. Williams must be released because there are conditions that will reasonably assure appearance and safety

Mr. Williams must be released because there are conditions that will reasonably assure the safety of the community and Mr. Williams's appearance in court. A defendant cannot be detained "unless a finding is made that no release conditions 'will reasonably assure . . . the safety of the community'" and the defendant's appearance in court. *United States v. Dominguez*, 783 F.2d 702, 707 (7th Cir. 1986) (quoting 18 U.S.C. § 3142(e)). Here, the government cannot carry its high burden of proving by clear and convincing evidence that there are no release conditions that will reasonably assure the safety of the community. *See id*. at 708 n.8. The government also cannot prove by a preponderance of the evidence that there are no conditions that would reasonably assure Mr. Williams's appearance in court. Thus, Mr. Williams should be released.

The following conditions of release under § 3142(c)(1)(B), and any other conditions this Court deems necessary, will reasonably assure Mr. Williams appearance in court and the safety of the community.

- High Intensity Supervision Program;
- Report on a "regular basis" to PTS or some other agency, *id*. § 3142(c)(1)(B)(vi);
- Comply with a curfew, *id*. § 3142(c)(1)(B)(vii);
- Refrain from possessing "a firearm, destructive device, or other dangerous weapon," *id*. § 3142(c)(1)(B)(viii);
- Refrain from "excessive use of alcohol," *id*. § 3142(c)(1)(B)(ix); and
- Refrain from "any use of a narcotic drug or other controlled substance . . . without a prescription," *id*. § 3142(c)(1)(B)(ix).

Because there are conditions of release that will reasonably assure Mr. Williams's appearance in court and the safety of the community, he should be released.

## CONCLUSION

For the foregoing reasons, and for any other reasons this Court may determine at a hearing on this motion Mr. Williams respectfully requests that this Court release him with conditions.

Respectfully submitted,

A.J. KRAMER
FEDERAL PUBLIC DEFENDER

_____/s/_____
Tezira Abe
Assistant Federal Public Defender
625 Indiana Ave. N.W., Suite 550
Washington, D.C. 20004
(202) 208-7500